UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RYAN BREACH,

       Plaintiff,         24-cv-819 (PKC)

     -against-         OPINION AND ORDER

LOADSMART, INC.,

       Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.,

     Plaintiff Ryan Breach brings claims for breach of contract and promissory estoppel against defendant Loadsmart, Inc. ("Loadsmart").  Breach alleges that he and Loadsmart entered into a contract for Breach to transport freight for Home Depot three to five times per week over a period of approximately nine months.  According to Breach, Loadsmart violated the terms of the agreement when it stopped assigning shipments to him after he transported only one load.  Breach asserts that he relied on Loadsmart's promises in the contract and others made by Loadsmart's representatives in moving to be closer to the transport route and purchasing and insuring a new trailer.

     Loadsmart now moves to dismiss Breach's Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  In support of its motion, Loadsmart has submitted the User Agreement that it contends forecloses Breach's claims.  Breach has admitted on the record in open court that he entered into the User Agreement in order to use Loadsmart's services.  The User Agreement provides that Loadsmart functions, in essence, as a broker that connects "Shippers," such as Home Depot, with "Carriers," such as Breach, in order to facilitate the transportation of freight. The consequence is that the obligated counterparty to Breach was Home Depot and not

Loadsmart, who was nothing more than a broker or intermediary between Breach and Home

Depot.  For reasons that will be explained, Loadsmart's motion to dismiss will be granted.

BACKGROUND

       For the purposes of Loadsmart's motion to dismiss, the Court accepts well-

pleaded allegations in Breach's Complaint as true and draws all reasonable inferences in

Breach's favor.  See Koch v. Christie's Intern. PLC, 699 F.3d 141, 145 (2d Cir. 2012).  As the

Court will explain, the User Agreement is properly considered on this motion.  The picture

painted by the words of the Complaint appears very different when considered in the context of

the controlling User Agreement.

       The User Agreement provides that "Loadsmart is a technology platform that

brings together shippers and receivers of freight . . . and motor carriers . . . engaged in the

business of transporting freight for hire . . ., to facilitate the booking and management of

truckload shipments . . . . "  (ECF 29-1 at 5.)  It further provides that Loadsmart's platform

"enabl[es] Shippers to post details of desired and requested shipping and transportation needs,

Carriers to accept such requests, and both parties to book and manage the resulting Shipments."

(Id. at 5 § I.A.)  The User Agreement states that "Loadsmart is not a Shipper or Carrier" and that

when a "Carrier" accepts a shipment at a quoted price and the shipment is assigned to it "that

Carrier and Shipper are legally bound."  (Id. at 5-6 §§ I.A., I.B.(1).)  Consistent with

Loadsmart's role as intermediary, the User Agreement contains a broad limitation on liability on

the part of Loadsmart for "ANY LOST PROFIT OR ANY INDIRECT, CONSEQUENTIAL,

EXEMPLARY, INCIDENTAL, SPECIAL, OR PUNITIVE DAMAGES ARISING FROM OR

RELATING TO THIS AGREEMENT . . . ."  (Id. at 23 § XVII.)

       Unmoored from any reference to the existence of the User Agreement, the

Complaint alleges that in late 2021, Loadsmart hired Breach to transport freight in a commercial

trailer from a store owned by Pratt Industries in Macungie, Pennsylvania to a Home Depot distribution center in Breinigsville, Pennsylvania. (ECF 1 ¶¶ 12-13.) Breach worked this route from December 2021 to January 2022 and was paid $900 per load. (Id. ¶¶ 14-15.) In early February 2022, Loadsmart offered Breach an exclusive contract to service the same route for a period of nine months, albeit at a lower rate of $800 per load. (Id. ¶¶ 3, 16.) Breach sought clarity from Loadsmart as to the certainty of these loads continuing to be booked by Home Depot. (Id. ¶ 18.) A Loadsmart representative assured him that Home Depot would continue to do so and said that "sometimes it may be more than 5 a week." (Id. ¶ 19.) On February 24, Breach also had a conference call with the Loadsmart representative, as well as Loadsmart's "Regional Capacity Manager," to discuss the agreement. (Id. ¶ 20.)

That same day, Breach and Loadsmart entered into what the Complaint alleges was a "written [c]ontract" memorializing the above terms. (Id. ¶ 21; ECF 1-3 at 2.) The document, attached to the Complaint, consists of a single page titled "Contracted Lane Confirmation" (the "Confirmation") that is signed by Breach and Loadsmart's "Senior Director, Capacity Development," Christopher Micks. (ECF 1-3 at 2.) The Confirmation covers the same route from Macungie to Breinigsville that Breach had previously serviced, with its "Lane ID" listed as "Home Depot." (Id.) It provides for a "Commitment" of "3-5 Shipments per week," starting on February 28, 2022, and ending on December 8, 2022, at a price per load of $800. (Id.) The Confirmation also refers to a "9 Month Contract." (Id.) In addition, it imposes certain obligations on Breach as the "Carrier," including that he will "haul 95% of the total commitment," "adhere to 95% on time service performance," and not fail to pick up more than one load per week. (Id.)

After agreeing to the Confirmation, Breach moved to Bethlehem, Pennsylvania and rented an apartment in order to be closer to the route. (ECF 1 ¶¶ 37, 39.) Breach had told the Loadsmart representative when Loadsmart approached him about entering into the exclusive contract, "I'll move down here" and "to make sure I don't miss one of these [loads] I [sic] going to have to move down here." (Id. ¶ 38.) Loadsmart was aware that Breach lived a long distance away from the route. (Id. ¶¶ 34-35.) Breach and Loadsmart had also discussed the possibility that the nine-month term would be extended by at least three months if Breach performed well. (Id. ¶ 36.) To transport the loads covered by the Confirmation, Breach purchased and insured a second trailer. (Id. ¶¶ 42, 45, 46.) Loadsmart was aware that Breach intended to purchase a second trailer to better service the route. (Id. ¶ 44.)

Breach alleges that he only completed one shipment under the Confirmation. (Id. ¶ 49.) After that, Loadsmart stopped assigning shipments to him. (Id.) Loadsmart did not provide any explanation for this change, nor did it offer other jobs to Breach. (Id. ¶¶ 49-51.)

On April 19, 2023, Breach initiated this action against Loadsmart in the United States District Court for the Eastern District of Pennsylvania. The Complaint asserts claims for breach of contract and "promissory estoppel/detrimental reliance." (Id. at 5-7.) Breach seeks damages for lost revenue under the Confirmation and the expenses that he incurred in moving to Bethlehem and purchasing and insuring a second trailer. (Id. ¶¶ 60, 61, 69.)

Loadsmart moved to dismiss the Complaint pursuant to Rule 12(b)(6) or, in the alternative, to transfer the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404. (ECF 5 at 1.) In support of its motion, Loadsmart submitted a User Agreement that it claimed Breach agreed to in October 2019 in order to use Loadsmart's services. (Id. at 20-43.) The late Judge Edward G. Smith, U.S.D.J., of the Eastern

District of Pennsylvania, heard oral argument on Loadsmart's motion.  (ECF 16 at 1.)  At oral argument, Breach's counsel admitted that Breach had entered into the same User Agreement that Loadsmart submitted.  (Id. at 37:19-20, 39:16-18.)  The case was reassigned to Judge Gerald A. McHugh, U.S.D.J., of the Eastern District of Pennsylvania, following Judge Smith's passing.  (ECF 18.)  Judge McHugh granted the motion to transfer.  (ECF 20.)

In support of its motion to dismiss the Complaint, Loadsmart has submitted the 2019 version of its User Agreement to the Court.  (ECF 29-1 at 5-28.)  Among other things, Loadsmart contends that the User Agreement defines the nature of the parties' relationship, the Confirmation is not a standalone document and cannot be interpreted without reference to the User Agreement, and the User Agreement's various provisions foreclose Breach's claims.  The parties dispute whether the Court can consider the User Agreement in resolving Loadsmart's motion to dismiss.  Breach argues that if the Court does consider the User Agreement, pursuant to Rule 12(d), Fed. R. Civ. P., it must convert Loadsmart's motion to dismiss into a motion for summary judgment under Rule 56, Fed. R. Civ. P.

LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must examine only the well-pleaded factual allegations, disregarding any legal conclusions, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 678-79.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152

(2d Cir. 2002) (quoting International Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Id. at 153 (quoting International Audiotext, 62 F.3d at 72).  In addition, the Court may consider "matters of which judicial notice may be taken."  Id. (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

DISCUSSION

Consideration of Loadsmart's User Agreement

Before addressing the merits of Loadsmart's motion to dismiss, the Court must determine whether it is appropriate to consider the contents of the User Agreement without converting the motion into one for summary judgment under Rule 56.  Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Notwithstanding Rule 12(d)'s conversion requirement, the Court may consider materials that are "integral" to the Complaint or subject to judicial notice.  Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006).  Based on these two exceptions, the Court concludes that it is proper to consider the contents of the User Agreement in resolving Loadsmart's motion to dismiss without converting the motion into one for summary judgment.

The User Agreement describes the nature of Loadsmart's services.  It provides that "Loadsmart is a technology platform that brings together shippers and receivers of freight (collectively, 'Shippers') and motor carriers ('Carriers') engaged in the business of transporting

freight for hire ('Transportation Services'), to facilitate the booking and management of truckload shipments ('Shipments')." (ECF 29-1 at 5.)  The User Agreement also identifies the channels through which Loadsmart offers its services, namely "[t]he website 'Loadsmart.com'" and "the Loadsmart associated mobile application." (Id.)  As stated in the User Agreement, "BY CLICKING 'ACCEPT' AND REGISTERING FOR, AND/OR USING THE SOFTWARE IN ANY MANNER," a party "ACCEPT[S] AND AGREE[S] TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT." (Id.)

　　　　　The applicability of the User Agreement to this dispute therefore turns in the first instance on the threshold question of whether Breach entered into it.  The Complaint neither mentions the User Agreement nor the circumstances under which Breach agreed to it.  However, on the record in open court before Judge Smith on Loadsmart's motion to dismiss or transfer, Breach's counsel admitted that Breach entered into the User Agreement that is presently before the Court.  Loadsmart originally submitted the 2019 version of its User Agreement as an exhibit to its motion to dismiss or transfer.  (ECF 5 at 20-43.)  Breach's counsel acknowledged that "the version [of the User Agreement] provided to us is from 2019, the one my client signed." (ECF 16 at 37:19-20.)  She then stated, "there's no dispute that my client had to sign on to this agreement in order to use the Loadsmart service." (Id. at 39:16-18.)  Her admission was consistent with the recognition in Breach's brief opposing the motion to dismiss or transfer that Loadsmart was attempting to "invoke[] a User Agreement signed by Plaintiff in October 2019." (ECF 10 at 8.)  Loadsmart has re-submitted this version of its User Agreement in support of the instant motion. (ECF 29-1 at 5-28.)  The Court must initially determine whether it is appropriate to consider the admission made by Breach's counsel at oral argument for its truth—i.e., that Breach entered into the User Agreement.

The Second Circuit has cautioned that while "[a] court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings," it may not do so "for the truth of the matters asserted in the other litigation." Global Network, 458 F.3d at 157 (quoting International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)). But that general rule does not directly address a court's ability to take judicial notice of an admission made in the same action before it for the truth of the matter asserted. In Pascazi v. Rivera, 13-cv-9029 (NSR), 2015 WL 845839, at *1 n.2 (S.D.N.Y. Feb. 26, 2015), for instance, the court took judicial notice of an admission by the pro se plaintiff because he admitted the fact in representations to the court during a pre-motion conference, advanced arguments in his opposition papers that presumed the fact, and did not dispute the fact despite the defendant's reliance on it. The court considered the admission for its truth in granting the defendant's motion to dismiss. Id. at *6, *9. Even when the admission is made in a separate action, courts have identified exceptional circumstances warranting departure from the general rule, including that the admission bore on the legal sufficiency of the complaint, the plaintiff had adequate notice that the court would be asked to take judicial notice of the admission, and the plaintiff had not contested the accuracy of the admission. See 5-Star Management, Inc. v. Rogers, 940 F. Supp. 512, 518-19 (E.D.N.Y. 1996) (taking judicial notice of a statement that the plaintiff's principal made under oath at a hearing in a related action, the transcript of which was attached as an exhibit in support of the motion to dismiss, where the admission bore "substantially upon the legal sufficiency of [the plaintiff's] complaint," the plaintiff had adequate notice of the defendants' intention as to the admission, and the plaintiff had not "contested the defendants' factual characterization" of the admission); Abdul-Rahman v. City of New York, 10-cv-2778, 2012 WL 1077762, at *3-4 (E.D.N.Y. Mar. 30, 2012) (taking

judicial notice of the plaintiff's testimony in his criminal trial where the testimony was "directly relevant to the Complaint's allegations," the plaintiff was "plainly aware of his prior testimony when drafting the Amended Complaint," and the plaintiff had not "disavowed his prior testimony" or "offered a contradictory set of facts"). In both 5-Star Management and Abdul-Rahman, the court considered the admissions for their truth in granting the defendants' motions, without converting them into motions for summary judgment. 5-Star Management, 940 F. Supp. at 519, 522; Abdul-Rahman, 2021 WL 1077762, at *4, *10.

Breach's admission was made in this very action, albeit before the transferor court. The Court concludes that it is appropriate for the Court to take judicial notice of the admission for the truth of the matter asserted. Breach's counsel made the admission in this same action and has not recanted or contested its accuracy, despite having had that opportunity. As was the case with the admissions in 5-Star Management and Abdul-Rahman, the admission that Breach entered into the User Agreement is essential to construing the Complaint's allegations that center on the nature of the parties' contractual relationship. Like the plaintiffs in 5-Star Management and Abdul-Rahman, Breach also had sufficient notice of Loadsmart's intention that this Court take judicial notice of his counsel's admission. Loadsmart asserted that Breach accepted the User Agreement in its opening memorandum in support of the instant motion, and re-submitted it as an exhibit. (ECF 29 at 10; ECF 29-1 at 5-28.)

The Court also concludes that the User Agreement is "integral" to Breach's claim. For a document that is neither referenced in a complaint nor attached to it to be deemed "integral" to the complaint and properly subject to consideration, "a plaintiff's *reliance* on the terms and effect of [that] document in drafting the complaint is a necessary prerequisite . . . mere notice or possession is not enough." Chambers, 282 F.3d at 153. In addition, "it must be clear

on the record that no dispute exists regarding the authenticity or accuracy of the document" and "that there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

This exception to Rule 12(d)'s conversion requirement is mostly recognized where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Global Network, 458 F.3d at 157. In this context, a complaint is properly understood to stand or fall on a document's contents when that document is "integral to [the plaintiff's] ability to pursue" his claims. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). In Wilson v. Kellogg Co., 111 F. Supp. 3d 306, 313-14 (E.D.N.Y. 2015), aff'd on other grounds, 628 F. App'x 59 (2d Cir. 2016), for instance, the defendant's terms and conditions on its online portal, which the plaintiff agreed to, foreclosed the plaintiff's claims for breach of an implied contract and unjust enrichment. The court considered the terms and conditions in resolving the defendant's motion to dismiss "particularly since it is 'integral to [plaintiff's] ability to pursue' his cause of action." Id. at 312 (quoting Sira, 380 F.3d at 67). Similarly, in Burton v. Label, LLC, 344 F. Supp. 3d 680, 692-97 (S.D.N.Y. 2018), the defendants' terms and conditions for their services, which the plaintiffs signed, controlled the relationship between the parties, limited the plaintiffs' recoverable damages, and did not impose an obligation on the defendants that would support the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. The court deemed the terms and conditions to be "integral" to the complaint because "it is the contract 'upon which the plaintiff's complaint stands or falls.'" Id. at 692 n.4 (quoting Global Network, 458 F.3d at 157).

The User Agreement that Loadsmart has submitted is "integral" to the Complaint. It sets forth the terms and conditions that govern Breach's contractual relationship with Loadsmart. Breach alleges that he and Loadsmart "began to do business together in late 2021," but in actuality he entered into the User Agreement in 2019 in order to use Loadsmart's services. (ECF 1 ¶ 12.) Breach also claims that Loadsmart "approached" him about entering into an exclusive contract to transport freight for "the customer" Home Depot, and that the Confirmation is the agreement "memorializing the terms" of that commitment. (Id. ¶¶ 16, 18, 21.) Notwithstanding Breach's characterization of this engagement, Breach used Loadsmart's services in a manner consistent with how those services are described in the User Agreement. The User Agreement provides that Loadsmart is a "technology platform" that connects "Shippers" and "Carriers" that are "engaged in the business of transporting freight for hire" in order "to facilitate the booking and management of truckload shipments." (ECF 29-1 at 5.) Loadsmart connected Breach, the "Carrier," with Home Depot, the "Shipper," for the same purpose of facilitating the transport of freight. The User Agreement is also the "contract . . . upon which [Breach's] complaint stands or falls." Global Network, 458 F.3d at 157. As the Court will discuss below, by delineating the precise nature of the relationship between Breach, Loadsmart, and Home Depot, the User Agreement "undermine[s] the legitimacy of [Breach's] claim" that Loadsmart is the party that is liable to him for breach of contract and "promissory estoppel/detrimental reliance." Id.

Having concluded that the User Agreement is "integral" to the Complaint, the Court will not permit Breach's artful pleading to avoid the very agreement defining the nature of the relationship between Breach and Loadsmart. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) ("Plaintiffs' failure to include matters of which as pleaders they had

notice and which were integral to their claim—and that they apparently most wanted to avoid—
may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion.")
(quoting Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 44 (2d Cir. 1991)).  Further,
Breach does not dispute "the authenticity or accuracy of the document" or raise any "material
disputed issues of fact regarding the relevance of the document."  Faulkner, 463 F.3d at 134.

   Because the Court has determined that the admission that Breach entered into the
User Agreement is properly subject to judicial notice and that the User Agreement itself is
"integral" to the Complaint, it is not necessary to convert Loadsmart's motion to dismiss into one
for summary judgment.  The Court also notes that converting Loadsmart's motion would not
serve a useful purpose in this case.  Rule 12(d)'s conversion requirement "expressly addresses
and solves the major problem that arises when a court considers matters extraneous to a
complaint, namely, the lack of notice to the plaintiff that outside matters would be examined."
Global Network, 458 F.3d at 155.  The requirement "deters trial courts from engaging in
factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers
evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-
upon evidence by submitting material that controverts it."  Id.  But Breach has already admitted
in this action that he entered into the same User Agreement that Loadsmart has submitted in
support of its motion to dismiss.  Loadsmart's motion relies upon the admission and the User
Agreement.  Thus, Breach had notice that the Court would consider the User Agreement.  He has
neither recanted nor contested the admission.  Breach has been free to present any argument he
wishes as to the import and interpretation of the User Agreement that he agrees he entered into.

<u>Loadsmart's Motion to Dismiss</u>

With the User Agreement properly before the Court, the Court concludes that the motion to dismiss Breach's claims for breach of contract and "promissory estoppel/detrimental reliance" should be granted. The Court concludes that the User Agreement forecloses the Complaint's breach of contract and promissory estoppel claims.

To plead a cause of action for breach of contract under New York law, "a plaintiff usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages."[1] <u>34-06 73, LLC v. Seneca Insurance Co.</u>, 39 N.Y.3d 44, 52 (2022) (citations omitted). The User Agreement forms the basis of Breach's contractual relationship with Loadsmart. Breach entered into the User Agreement in 2019 in order to use Loadsmart's services. (ECF 16 at 37:19-20, 39:16-18.) The User Agreement describes those services as follows: "Loadsmart, as a technology platform, brings together Shippers and Carriers for the transportation of Shipments to, from, and between points in the United States . . . enabling Shippers to post details of desired and requested shipping and transportation needs, Carriers to accept such requests, and both parties to book and manage the resulting Shipments." (ECF 29-1 at 5 § I.A.) In essence, Loadsmart functions as a broker in connecting "Shippers" and "Carriers" in order to facilitate the transportation of freight. As the User Agreement plainly states, Loadsmart itself "is not a Shipper or Carrier." (<u>Id.</u>) The User Agreement also provides that once a "Shipper" has detailed its transportation needs, received a price, and "booked" its shipment,

---

[1] The User Agreement provides that "[t]he laws of the State of New York will govern this Agreement, as well as any claim that might arise between you and Loadsmart, without regard to conflict of law provisions." (ECF 29-1 at 26 § XXI.B.) "The parties' briefs [also] assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." <u>Arch Insurance Co. v. Precision Stone, Inc.</u>, 584 F.3d 33, 39 (2d Cir. 2009). Accordingly, the Court applies New York law.

Loadsmart sends its registered "Carriers" "information about the Shipment and the price

Loadsmart [is] offering to Carrier." (Id. at 6 § I.B.(1).) When a "Carrier" accepts the shipment

at the quoted price and the shipment is "assigned" to it, "that Carrier and Shipper are legally

bound." (Id.) While Loadsmart may continue to provide "certain ancillary features" and handle

payments for completed shipments, under the terms of the User Agreement it is the "Carrier" and

the "Shipper" who become "legally bound." (Id. at 6-7, 13-14 §§ I.B.(1), I.C.(1), VI.A., VI.B.)

In this case, and as contemplated in the User Agreement, Loadsmart functioned as a broker in

connecting Breach and Home Depot in order to fulfill the latter's shipping needs.

    Viewed through the lens of the User Agreement, the Confirmation cannot

plausibly be read to impose any additional or independent contractual obligations on Loadsmart.

The Confirmation sets out certain details regarding Breach's shipment of freight for Home

Depot, including the origin and destination, weekly number of shipments, start and end date, and

price per load. (ECF 1-3 at 2.) The Confirmation also requires that Breach, as "Carrier," adhere

to several obligations like "haul[ing] 95% of the total commitment" and "95% on time service

performance." (Id.) Breach alleges that the Confirmation contains the "essential terms" of an

agreement between him and Loadsmart. (ECF 1 ¶ 55.) However, with the understanding that

Loadsmart principally functions as a broker, it is apparent that Breach has based his claim on a

standalone document that is merely a product of Loadsmart's efforts to connect Breach with

Home Depot. Consistent with Loadsmart's facilitation of a shipping arrangement between

Breach and Home Depot, the Confirmation describes Home Depot's shipping needs, quotes a

price being offered to Breach by Loadsmart, and imposes certain obligations on Breach. It does

not contain any terms that could reasonably be interpreted to expand or modify Loadsmart's

obligations as a broker pursuant to the User Agreement.

The Complaint also fails to allege a breach of the User Agreement by Loadsmart as a broker. Rather, fairly read, Breach's Complaint seeks to hold Loadsmart liable solely as if it were a principal. Breach's cause of action is entirely premised on Loadsmart's alleged failure to continue giving him loads to transport after he completed "only one shipment." (Id. ¶¶ 58-59.) But construed in light of the User Agreement, Loadsmart was not a principal. As the User Agreement provides, Loadsmart's platform "enabl[es] Shippers to post details of desired and requested shipping and transportation needs, Carriers to accept such requests, and both parties to book and manage the resulting Shipments. Loadsmart is not a Shipper or Carrier." (ECF 29-1 at 5 § I.A.) Because Breach's allegations against Loadsmart fall outside the scope of the User Agreement, basic contract principles dictate that the breach of contract claim must be dismissed. See Yanker v. Zoomcar, Inc., 23-cv-6847 (SHS), 2024 WL 4202698, at *2 (S.D.N.Y. Sept. 16, 2024) ("A breach of contract claim may be dismissed when the alleged breach of contract applies to an activity that is specifically excluded by, or outside of the scope of, the contract."); Long v. Marubeni America Corp., 05-cv-0639 (GEL), 2006 WL 1716878, at *1 (S.D.N.Y. June 20, 2006) ("To the extent the alleged unlawful conduct falls outside the scope of the contract, it may not form the basis of . . . a breach-of-contract claim . . . .").

If anything, the allegations here appear to center on Home Depot's continuing obligations to Breach after they became "legally bound" within the meaning of the User Agreement. (ECF 29-1 at 6 § I.B.(1).) Loadsmart cannot be held liable for another's purported conduct because "[a] breach of contract is, by definition, a violation of a contractual obligation by failing to perform *one's own promise*, not someone else's." Martinez v. Vakko Holding A.S., 07-cv-3413 (LAP), 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008) (internal quotation marks, brackets, and citation omitted). Relatedly, "[i]t is fundamental to the very definition of contract

that parties are only liable for breach of agreements that they have voluntarily undertaken."

Leutwyler v. Royal Hashemite Court of Jordan, 184 F. Supp. 2d 303, 309 (S.D.N.Y. 2001).  As a

broker, Loadsmart facilitated the transportation of Home Depot's freight by securing Breach's

services.  In serving this function, Loadsmart did not become liable for any failure by Home

Depot to perform its obligations.  Indeed, relying on New York agency law, courts have declined

to impose liability on brokers like Loadsmart for their principals' contractual breaches.  A realtor

that acts on behalf of a seller, for instance, will not be held liable for breach of contract when the

seller causes an agreed-upon real estate transaction to fail.  See Sirles v. Harvey, 256 A.D.2d

1227, 1227-28 (4th Dept. 1998) (affirming grant of summary judgment dismissing breach of

contract cause of action against realtor because "[a]n agent dealing on behalf of a disclosed

principal is not liable for her principal's breach of contract absent evidence that the agent

intended to be bound personally on the contract").

              The Court concludes that the User Agreement also forecloses Breach's claim

against Loadsmart for "promissory estoppel/detrimental reliance."  As a threshold matter,

"[d]etrimental reliance is an element of equitable and promissory estoppel; there is no

independent cause of action for detrimental reliance."  Paxi, LLC v. Shiseido Americas Corp.,

636 F. Supp. 2d 275, 286-87 (S.D.N.Y. 2009) (quoting Brinsights, LLC v. Charming Shoppes of

Delaware, Inc., 06-cv-1745 (CM), 2008 WL 216969, at *5 (S.D.N.Y. Jan. 16, 2008)).  The Court

therefore treats Breach's claim as one for promissory estoppel.  "Under New York law,

promissory estoppel has three elements: (1) a clear and unambiguous promise, (2) a reasonable

and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained

by the party asserting the estoppel by reason of the reliance."  Id. at 287 (quoting Brinsights,

2008 WL 216969, at *5).  However, in New York promissory estoppel claims "are ordinarily

precluded if a valid and enforceable written contract . . . governs the relevant subject matter."

Goldberg v. Pace University, 88 F.4th 204, 214 (2d Cir. 2023) (quoting Beth Israel Medical

Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 587 (2d Cir.

2006)) (internal quotation marks and brackets omitted).  A plaintiff may assert causes of action

for both breach of contract and promissory estoppel if there is "a dispute over the existence,

scope, or enforceability of the putative contract."  Id. at 215 (quoting Reilly v. Natwest Markets

Group Inc., 181 F.3d 253, 263 (2d Cir. 1999)).

As previously explained, the User Agreement forms the basis of the parties'

contractual relationship and sets out Loadsmart's obligations in functioning essentially as a

broker.  Breach alleges that he relied on promises made by Loadsmart's representatives and

Loadsmart's promises in the Confirmation in moving to Bethlehem, Pennsylvania and

purchasing and insuring a second trailer.  (ECF 1 ¶ 69.)  Prior to signing the Confirmation,

Breach claims that a Loadsmart representative "assured him the loads would continue [to be

booked by Home Depot] and even said 'sometimes it may be more than 5 a week.'"  (Id. ¶¶ 18-

19.)  Breach also alleges that he had discussed with Loadsmart "that if [he] performed well over

the nine months of the Contract, Loadsmart might extend the Contract for at least three months."

(Id. ¶ 36.)  Breach asserts that in the Confirmation Loadsmart "made promises directly to [him]

regarding an exclusive contract for nine months, hauling three to five shipments per week."  (Id.

¶ 66.)  All of these alleged promises were made in connection with Loadsmart's efforts to

connect Breach with Home Depot in order to facilitate the transportation of freight.  That is

precisely the "subject matter" that is governed by the User Agreement.  Goldberg, 88 F.4th at

214 (citation omitted).  At the same time, there is no dispute in this case as to the "existence,

scope, or enforceability" of the User Agreement that Breach admittedly entered into in order to use Loadsmart's services.  Id. at 215 (citation omitted).

      Finally, consistent with Loadsmart's role as intermediary, the User Agreement contains a broad limitation on Loadsmart's liability:

> IN NO EVENT SHALL LOADSMART/SUPPLIER GROUP BE LIABLE TO USER OR ANY THIRD PARTY FOR ANY LOST PROFIT OR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL, OR PUNITIVE DAMAGES ARISING FROM OR RELATING TO THIS AGREEMENT OR USER'S USE OF, OR INABILITY TO USE, THE LOADSMART SERVICE, EVEN IF LOADSMART HAS BEEN ADVISED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES.[2]

(ECF 29-1 at 23 § XVII.)  Under New York law, contractual provisions limiting a party's liability are generally enforceable.  See Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc., 84 N.Y.2d 430, 436 (1994) ("A limitation on liability provision in a contract represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.").  However, New York courts will not enforce a limitation on liability provision when it is "the result of unconscionable conduct or unequal bargaining power between the parties," Camofi Master LDC v. College Partnership, Inc., 452 F. Supp. 2d 462, 478 (S.D.N.Y. 2006) (citation omitted), or when it would exempt "willful or grossly negligent or recklessly indifferent conduct." Baidu, Inc. v. Register.com, Inc., 760 F. Supp. 2d 312, 318 (S.D.N.Y. 2010).  Breach does not allege such conduct here.  Breach entered into the User Agreement as a motor carrier for hire—not a consumer—and agreed to the limitation on liability provision as part of his business of transporting freight.  Therefore, the Court concludes that the User Agreement's limitation on liability provision is enforceable.

---

[2] The term "LOADSMART/SUPPLIER GROUP" is defined as "LOADSMART AND ITS SUPPLIERS, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, CONTRACTORS, SUCCESSORS AND ASSIGNS . . . ."  (ECF 29-1 at 22 § XVI.)  It does not encompass "Shippers" or "Carriers."

For these reasons, Loadsmart's motion to dismiss the breach of contract and promissory estoppel claims is granted.

CONCLUSION

Loadsmart's motion to dismiss is GRANTED.  Breach's bare-bones request for leave to amend in the event the motion to dismiss is granted is DENIED without prejudice to his filing a motion to amend with a marked to show changes copy of the Complaint.  The Clerk of Court is respectfully directed to terminate the motion at ECF 28.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 10, 2025